UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, | |
| Plaintiff, | |
| - against- | Civil Action No. 17-cv-05343-JBW-LB |
| MEDTRONIC PLC, | |
| Defendant. | |
| MORRIS AKERMAN, | |
| Plaintiff, | |
| - against- | Civil Action No. 17-CV-5372-JBW-LB |
| MEDTRONIC PLC, | |
| Defendant. | |

## STIPULATION

WHEREAS, on August 28, 2017, Medtronic PLC ("Medtronic" or the "Company) filed a proxy statement with the Securities & Exchange Commission in advance of its December 8, 2017 annual meeting.

WHEREAS, Management Proposal 4 to this proxy statement requested that the shareholders amend and restate the Medtronic plc Amended and Restated 2013 Stock Award and Incentive Plan ("Restated 2013 Plan"), which would add 50 million new shares available to be granted to participants in the Restated 2013 Plan.

WHEREAS, Management Proposal 4 contained the following description concerning the eligibility of participants in the Restated 2013 Plan:

**Eligibility and Participation**

> The committee may select any or all of the following classes of persons to be granted awards under the plan: (i) members of our Board; (ii) officers of, employees of, and consultants to the Company and/or any of our subsidiaries; and (iii) individuals who have accepted offers of employment or consultancy from the Company, and/or from any of our subsidiaries; provided, however, that no grant will be effective prior to the date on which such individual's employment or consultancy commences. We have 91,000 employees as of July 1, 2017, but awards will generally be limited to executive and management-level employees.

WHEREAS, on September 12, 2017, Plaintiff Shiva Stein, a Medtronic stockholder, brought this action requesting injunctive relief ahead of the December 8th meeting requiring Medtronic to comply with Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101 ("Item 10(a)(1)"), which states that a proxy statement requesting stockholder approval of a compensation plan must: "Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."

WHEREAS, on September 13, 2017, Plaintiff Morris Akerman, a Medtronic stockholder, filed a similar case regarding Management Proposal 4 requesting the same relief.

WHEREAS, on October 11, 2017, this Court held a conference in this case during which counsel for Plaintiffs and Defendant informed the Court that Medtronic had provided the information required by Item 10(a)(1) in a revised proxy statement ("Revised Proxy Statement") filed with the SEC that morning. This Revised Proxy Statement is attached hereto as Exhibit 1. The relevant language complying with Item 10(a)(1) is found on page 71 and is as follows:

> **Eligibility and Participation**
>
> The committee may select any or all of the following classes of persons to be granted awards under the plan: (i) members of our Board or of the board of any of our subsidiaries; (ii) officers of, employees of, and consultants to the Company and/or any of our subsidiaries; and (iii) individuals who have accepted offers of employment or consultancy from the Company, and/or from any of our subsidiaries; provided, however, that no grant will be effective prior to the date on

which such individual's employment or consultancy commences. Following consultation with the committee's compensation consultant and the chief executive officer (with respect to awards not granted to him), the committee's selection of eligible participants in the 2013 Plan is generally based upon the committee's evaluation of, among other considerations, retention, reward and incentive needs to best encourage optimal outcomes for Company performance.

As of July 1, 2017, we had approximately 91,000 employees (which includes all of the full-time and part-time employees of the Company and its subsidiaries and approximately 80 officers of the Company and its subsidiaries), all of whom are eligible to participate in the 2013 Plan. To the extent permitted by applicable local law, all employees of the Company and its subsidiaries received awards under the 2013 Plan in connection with the Covidien acquisition, but awards will typically be limited to approximately 11,000 executive and management-level employees of the Company and its subsidiaries.

As of July 1, 2017, all 12 members of our Board, 11 of whom are non-employee directors, were eligible to receive awards under the 2013 Plan. Our current practice is to annually grant each non-employee director restricted stock unit awards with a grant date fair value of approximately $175,000. We believe that this annual equity grant to our non-employee directors, in combination with our stock ownership guidelines, further aligns the interests of our non-employee directors with the interests of our shareholders.

It is currently Company practice not to grant awards to the following classes of individuals under the 2013 Plan: (i) individuals who have accepted offers of employment from the Company or one of its subsidiaries, but whose employment have not commenced, (ii) non-employee directors of any subsidiary of the Company and (iii) consultants of the Company and its subsidiaries (including individuals who have accepted consultancy offers from the Company or one of its subsidiaries, but whose consultancy have not commenced).

Most of the members of our subsidiaries' boards are executive and management-level employees of the Company or one if its subsidiaries and these board members are eligible to participate in the 2013 Plan as a result of their being employees of the Company or one of its subsidiaries and do not receive additional compensation from the 2013 Plan as a result of their membership on a subsidiary board. In certain countries, however, our subsidiaries are required by local law to have outside consultants or legal professionals serve as members of the subsidiary's board. These outside consultants or legal professionals are eligible to receive awards under the 2013 Plan, but, as stated above, it is not the Company's practice to grant awards to these individuals.

All, or virtually all, of our consultants are hired through third party agencies. Since the individuals are not direct consultants to the Company and its subsidiaries, these individuals are ineligible to participate in the 2013 Plan. The

Company and its subsidiaries engage only a de minimus number of consultants directly and, as stated above, it is not the Company's practice to grant awards under the 2013 Plan to these individuals.

IT IS HEREBY AGREED AND STIPULATED by and among Plaintiffs and Defendant, by their respective counsel, as follows:

1. Plaintiff Stein, Plaintiff Akerman, and Defendant Medtronic ("the Parties") consent to consolidation of the above-captioned cases.

2. The Parties agree and stipulate that Defendant Medtronic by providing the Revised Proxy Statement to Medtronic stockholders, has mooted the above-captioned cases.

3. The Parties agree and stipulate to the following releases:

    A. Upon execution of this Stipulation, the following shall be fully, finally and forever discharged, settled, enjoined and released by Plaintiffs. Any claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters and issues known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, that have been or could have been, asserted in any court, tribunal, or proceeding (including but not limited to any claims arising under federal, state, foreign, or common law, including the federal securities laws and any state disclosure law), by or on behalf of Plaintiffs, whether individual, direct, class, derivative, representative, legal, equitable, or any other type or in any other capacity against the Defendant or any of its parent entities, controlling persons, associates, affiliates, or subsidiaries and each and all of their respective past or present officers, directors, stockholders, principals, representatives, employees, attorneys, financial or investment advisors, consultants, accountants,

investment bankers, commercial bankers, entities providing fairness opinions, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors, or assigns which Plaintiffs ever had, now have, or may have had by reason of, arising out of, relating to, or in connection with the acts, events, facts, matters, transactions, occurrences, statements, or representations, or any other matter whatsoever set forth in or otherwise related, directly or indirectly, to the allegations in the above-captioned actions, the complaints filed in these actions, the Medtronic September 1, 2017 Proxy Statement, the Medtronic 2017 annual meeting, or any claims arising under federal or state law relating to alleged fraud, breach of any duty, violation of any statute, negligence or otherwise related thereto ("Plaintiffs' Released Claims"); provided, however, that Plaintiffs' Released Claims shall not include claims to enforce this Agreement.

B. Upon execution of this Stipulation, the following shall be fully, finally and forever discharged, settled, enjoined and released by Defendant. Any claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters, and issues known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, that have been or could have been, asserted in any court, tribunal, or proceeding (including but not limited to any claims arising under federal, state, foreign, or common law, including the federal securities laws and any state disclosure law), by or

on behalf of Defendant against Plaintiffs, in their personal and representative capacities, including their heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, attorneys, and assigns, as to any and all claims, demands, rights, actions, causes of action, and liabilities, of any kind or nature whatsoever, for damages, injunctive relief, or any other remedies, whether direct or derivative, state or federal, known or unknown, asserted or unasserted, absolute or contingent, matured or unmatured, in law or in equity, which Defendant ever had, now has, or may have had by reason of, arising out of, relating to, or in connection with the acts, events, facts, matters, transactions, occurrences, statements, or representations, or any other matter whatsoever set forth in or otherwise related, directly or indirectly, to the above-captioned actions ("Defendant's Released Claims"); provided, however, that Defendant's Released Claims shall not include claims to enforce this Agreement.

4. Defendant, its insurers, or their respective successors in interest, also covenant to pay Plaintiffs' attorneys' fees, costs, and expenses in the amount of $200,000 in full satisfaction of any claim Plaintiffs' attorneys may have for attorneys' fees, costs, and expenses. Such fees, costs, and expenses shall be paid to Barrack, Rodos & Bacine by wire transfer within fourteen days of judgment being entered. Although this is not a class or derivative action, the Supreme Court has held that an individual action that results in a common benefit similarly entitles Plaintiff to recover appropriate attorneys' fees. *See Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166 (1939)." Plaintiffs have drafted a memorandum in support of attorneys' fees and expenses, which is attached hereto as Exhibit 2.

5. As requested by the Court during the October 11, 2017 conference, the Parties submit the attached [PROPOSED] JUDGMENT as Exhibit 3.

Dated: New York, New York
October 20, 2017

**BARRACK, RODOS & BACINE**

By: /s/ Arnold Gershon
A. Arnold Gershon
Michael A. Toomey
11 Times Square
640 Eighth Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Attorneys for Shiva Stein*

**STULL, STULL & BRODY**

By: /s/ Michael J. Klein
Michael Jason Klein
Patrick Slyne
6 East 45th Street
5th Floor
New York, NY 10017
Telephone (212)687-7230
Facsimile: (212)490-2022

*Attorneys for Plaintiff Morris Akerman*

**WILMERHALE**

By: /s/ Timothy Perla
Timothy Perla
60 State Street
Boston, MA 02109 USA
+1 617 526 6696 (t)
+1 617 526 5000 (f)

*Attorneys for Defendant Medtronic PLC*